Mr. Raupp, we'll hear from you first. Thank you, Your Honor, and may it please the Court. This Court can and should resolve this case without reaching the First Amendment question, and it can do so without creating any sort of a conflict with its sister circuits because there are two distinguishing factors present in this case, which established there is no action under color of state law. First, the exercise of Twitter's blocking feature here arose out of pure campaign speech, so under any recognized formulation of the state action doctrine, none is present here. Second, Representative Reisch is an individual state legislator, and as such, none of her actions on Twitter are or could have been an exercise of power that she possessed only by virtue of state law. Neither of these two case dispositive factors were present before either the Second or the Fourth Circuit in their relevant decisions, so when this Court is told that this case is merely the next-in-line application of those precedents, that is not accurate. In fact, to affirm the District Court's decision in this case, this Court would have to step far outside its own state action precedents, as well as those of the Supreme Court. Finally, if this Court does proceed to the constitutional question, reversal is appropriate there as well. There simply is not a forum applicable when Twitter, a private company, controls who can access the platform and, most importantly, what they can say there. Now, to be clear, it's far from certain that the decisions of the In fact, there was a dissent to denial of rehearing on Bonk in the Second Circuit case, and that case is now pending on a fully briefed petition for writ of certiorari before the Supreme Court and is awaiting conference. That said, conflict with those decisions is unnecessary here because even under the standards that they announced, there is no state action here. So, beginning with the color of state law point, this is where the District Court made its most significant error, and it did so because it conflated the concepts of establishing that the defendant was a state actor on the one hand, and also that that state actor exercised power possessed by virtue of state law. Most critically, the District Court found that campaign activity furthered the cause for state action, and not even my friends attempt to defend that position. Indeed, in their brief, they concede that when an individual is engaged in pure campaign speech, that is not state action, and that should be dispositive of the matter here because even under the Fourth Circuit's broadened articulation of what state action means, the Fourth Circuit made clear that the inquiry is to be limited to the specific actions giving rise to the claim. So, here, if we are to broaden the inquiry to look at the speech and what gave rise to the exercise of the blocking feature on Twitter, here it is undisputed that that was speech that was purely related to a campaign issue at a campaign function, at a debate between the two candidates, at a candidate forum. So, even under... Mr. Rupp, did you say it's undisputed that that was solely campaign activity? It is undisputed that the specific message on Twitter that this dispute arose out of is campaign activity. I don't believe that that is disputed. Now, other speech that occurred on Twitter, I think they certainly dispute that some of that they claim to be official in nature, but the specific speech that gave rise to this incident was purely campaign speech. When a legislator is already in office, and it looks like Missouri has a similar cycle through here, just as soon as you get elected, it's like the next day you're starting to campaign for the next election. How do you delineate between those two? Because it seems to me that part and parcel of your campaign is, once you're in office, look what I'm doing. So, you're reaching out to your constituents to say, here's what I've been lobbying for, here's what I've been doing on your behalf, and in part and parcel of that is, and therefore that's why you want me the next time around. I agree with you, Your Honor, and I think that a couple of responses to that. First of all, that is why none of the activity on Twitter for a state legislator is campaign speech, or I'm sorry, is state action. Because unlike the Second Circuit's doing through Twitter, where he was actually effectuating duties of the office, he was using it as a tool, and it was uncontested by the government in that case, that he was taking official actions on behalf of the government through Twitter. With a legislator, it's totally different. With a legislator, Representative Reich is one of 163 representatives in the Missouri House. So, she has the official function, of course, of casting votes or of participating in committee hearings, but when she simply speaks to constituents, no court has ever held that something that broad is state action, and I think that the example that you pose is exactly correct. But why isn't it the flip? You're saying that it's clearly all that's losing the flavor of the actual educating the constituents. I'm not sure they're separable. In other words, if you never speak to your constituency, the legislative branch is distinct from the other two, but part of that distinction is its interaction with the voters. It is the representative branch, and so I'm just puzzled on how you cannot at least describe a reaching out to those constituents that they directly represent. Certainly, and I agree with your honor, that it's a representative capacity. And our position certainly is that it very well is wise for them to do so, but there's nothing, there is no aspect of state law that gives them the legal, some sort of legal duty or authority to act, you know, with the force and effect of law in that branch, for example. Again, we get back to the inquiry of whether they are engaged in something, an activity that's made possible only because of their authority under state law. And here, you know, a representative, certainly while it may be a good idea, and that may be what happens, that does not mean that they are exercising authority under state law when they are taking any of those actions on Twitter. Counsel, I think this may be an appropriate time to ask you a question about your evaluation of what state action is. I'm thinking about the Brentwood case in particular, where it says that the state action that occurs when there's a close, such a close nexus between the state and a challenged action, that seemingly private behavior may be fairly treated as that of the state of itself. And then it goes on to say, what is fairly attributable is a matter of normative judgment. What does that mean exactly? Normative judgment, what is that? Yeah, that's a great question, Judge Arnold, and I wish I had a better answer for you. I don't know what it means. But I do think it's certainly fair to say that when you're looking at any specific situation, that it is fact-specific. That has been established through the Supreme Court's precedent and through this court's precedent. But the scope of that inquiry, I think, is central to this as well. It goes on to say, I think by way of explanation, the case says, and that the criteria lack rigid simplicity, which seems to me to indicate that normative judgment means some kind of sort of transcendental, maybe moral appreciation of what's really going on. Is that fair? I don't understand what this means. I don't understand what it means either, Your Honor, but I do think if we look to how these precedents have been applied in circumstances where since Brentwood and on, and again, to draw one distinction, Brentwood was a case where we were determining whether a conceitedly private right entity could nonetheless be attributed with acting as a matter under color of state law. Here, of course, we have a slightly different inquiry in that we, of course, concede that she is a state actor. The question then is whether she is engaged in anything under color of state law. But again, it's the focus of the specificity of the inquiry. So the ultimate question we have to ask is whether the execution of the blocking feature on Twitter is something that she did because she was clothed with the authority of state law. And if we broaden that inquiry a little bit, and we say, like the Fourth Circuit did, and we say, what are the uses of the blocking feature? Here, it was pure campaign speech. And again, I don't believe that is disputed. Because that inquiry doesn't work for Applees either, then they broaden that circle even further and say you have to look at all of the speech that had occurred on Twitter and determine whether any of that was a state action. We don't believe that there's any court that's doing that. We believe that the line-drawing problems created by that, as highlighted by Judge Kelly's question, are unmanageable. What do you think would be state action by a legislator other than the act of voting? Certainly the act of voting, anything that they do in connection with a committee hearing, they manage our designated funds to manage a legislative staff. So staff functions, I think, would certainly be or could be state action. How about beating out that your chief of staff is hired or fired? That's probably a closer call. I think that's similar probably to what to what President Trump was doing, but again, he has the ability to act, you know, unilaterally as the executive. So I don't know. But I, you know, I still... You don't think anything that Reich was doing would approach that? I don't believe so. Would constituent service qualify as referring, for instance, referring a constituent to a particular agency that might generate a benefit for the constituent? Perhaps, Your Honor. Again, I were acting through Twitter to, you know, to put someone in contact with someone else. I suppose that that gets closer to what would be state action. But again, I'm not sure that they're, that even at that point, that they're effectuating any duty or authority that they have by virtue of state law. They're making a recommendation just as you or I or anyone could. Well, but I mean, but their advice is being because of their expertise. In any event, that's not just cases. That's right. No, that's right, Your Honor. And I, and again, I think that the campaign feature of this is, is, has to be critical to the analysis because the courts have long, have long, of course, held that, that it is not state action when people are engaged in campaign functions. And so that's, that's a critical component of this analysis. It seems to be undisputed. Maybe it's not, if it's not, you'll say so that this Twitter account had its genesis as a means of announcing her candidacy. Is that correct? I believe it is undisputed that the account was created for use in her campaign. The first tweet on the account was to announce her campaign. And at all times, the link on the account to her website was to her campaign account. I believe that all of those facts are undisputed. I'd like to touch quickly on the forum analysis. If we do get to the First Amendment question, I think my friend and I start from the same premise that the forum analysis only applies to property that is owned or controlled by the government. And there's no dispute here that this is not property owned by the government. The dispute is whether it is controlled by the government. And here, Twitter controls both access to the platform and the content that can be shared on the platform. And if even, you know, the activity in the last month demonstrates that Twitter can ban accounts from Twitter, can suspend accounts, can delete posts, and can alter posts. And again, to be clear, this is not at all about whether that is good, bad, or indifferent that they can do so, or whether it was acceptable for them to do so in any circumstance. But Twitter can't, and tell me if I'm wrong, but Twitter can't go in and block particular people from a particular person's Twitter account, correct? I don't know if they could do that or not. I suspect since they have the ability to ban them outright, they could, from a technical perspective, they could probably do that. I don't think there's any evidence of them doing so, to your platform, as opposed to blocking them from particular accounts. I guess my, what I'm trying to sort of parse out here is that I don't, Mr. Campbell's not complaining about Twitter as the big entity Twitter. He has his own account, right, and can follow other Twitter users. He's concerned about this particular one. And so, it seems to be talking about Twitter, in the bigger sense, is making it, is blowing it up too big, that we need to look at exactly what portion he was excluded from. Am I wrong about that? No, you're right, and I take your point, and I'd have a couple of responses. First of all, when the inquiry is whether we have a public forum of any sort or not, the point we're making here is that even in that limited area, right, the interactive portion of her Twitter page, Twitter still controls that space, and it controls what those individuals can say there. And I'm not aware of any other example of where the government is said to be opening up a place for public use where whoever is there enjoys less than the full panoply of their First Amendment rights. In other words, Twitter has content restrictions that are far more restrictive than the First Amendment. Yet, the forum analysis is simply not a good fit for a place that is controlled by a private entity. And the final point I'll make, I see I'm getting into my rebuttal time, the final point I'll make is that this court would be the first to hold that an individual state legislator, similar to our analysis on the first point, that an individual state legislator is able to open up a public forum. And this is the issue that was highlighted by Judge Kenan's concurrence and Davidson. And noting that it should be an issue that's addressed by the Supreme Court, obviously it has not been yet. But I think that's an important point if the court gets to the constitutional analysis. Do you have a view, Mr. Raup, on whether if the legislator's act of blocking is state action, whether it's also government speech? Yes. I believe that the, and this is why the Second Circuit parsed out the interactive portion below. That's a term, from what I can tell, the Second Circuit decided just to use, because everyone conceded in that case, and I think here too, that the actual tweets, if they are official in nature, they are government speech. And so they had to speech, then there is no First Amendment protection for, you know, there's deference to that government speech. So I believe that anything, I think the law is that anything on that Twitter page, it should be viewed as a whole, and it is government speech. Well, but I thought we were talking about the act of blocking, not the feed that appears. We're talking about a feed that's not going to appear because Campbell is blocking itself speech by the government, if the legislator's didn't say it. I apologize if I didn't draw the distinction. I believe that once it's established, if it's established that it's an official account, our position would be that then anything that happens on that account, because it's on a private platform, anything that happens there is government speech. I see. You're saying that if she allows speech on there, then it becomes government speech, and if she blocks speech, the act of blocking is government speech, if this is all state action. That's correct, Your Honor. All right. I understand. Thank you for your argument. Mr. Hurth, we'll hear from you. Thank you, Your Honor. May it please the court. I would describe the issue before the court today really as a two-part question. And that is, the first part is whether a public forum, by using the interactive or allowing for the interactive social media account, using a social media account to communicate with the public about the performance, her performance in office. And if so, then the second part of the question is whether excluding her critics from that forum based on their viewpoint violates the free speech clause of the First Amendment. Both the Second Circuit and the Fourth Circuit have answered those two questions, or both parts of that question in the affirmative. And here, the district court did as well. And, of course, we are asking this court to adopt the same reasoning that those courts have followed. Now, in her appeal, Representative Rice really advances a couple of challenges. One is this notion that she engaged only in campaign speech, and so that can't be considered state action because this is a private platform owned by Twitter, that she doesn't own it, and that an individual legislator doesn't act individually, that they act en masse, and therefore, outside of voting, she can't engage in those kinds of activities. And in particular, she's focusing on the issue of blocking. She wants the court to solely look at the issue of blocking Mr. Campbell in one instance. And I think that is really putting the cart before the horse. The inquiry is not that narrow, I don't believe. Looking at the way the Supreme Court and this court has addressed the state action question, starting with Lugar v. Edmondson-Oyle, the Supreme Court said that to be state action, the conduct must be fairly attributable to the state. And as you mentioned earlier, looking at the Brentwood Academy case, there the court is saying there's no one function, there's no one specific fact that is always necessary to be state action or which is always sufficient for state action. You have to look at the circumstances surrounding the situation. And doing so, looking at those circumstances, the Fourth Circuit in the Davison case held that a challenged action by a government official is fairly attributable to the state when the sole intention of the official in taking action is to suppress speech critical of her conduct in office. And similarly, in the Knight case, the Second Circuit held that the president acts in an official capacity when he tweets, he acts in the same capacity when he blocks those who disagree with him. Here we do have the legislator. You've asked us to adopt the reasoning of the other circuits. It's not exactly the same on the state actor element. Would you agree? Certainly, a legislator is a different kind of office than an executive. But I would not agree that the creation of a public forum or the blocking of someone from a public forum is limited to the president or to even to an executive officer individually. Does it affect whether it's state action, whether she's a state actor? You've shifted it to the public forum. But if you get it, whether this is he's out of the gate, he's saying, well, this isn't even state action. Right. And that's what I think is putting the cart before the horse, because the issue is when we approach it this way, if this is a public forum, and that's that's the big question, if this is a public forum, it can only be created by a government official. I can't create a public forum as a private citizen. That's something that only the government can create. And we argue here that Rice created that public forum when she chose to use an interactive social media account that allows people to comment and respond to what she tweets. The so if it's a social media, I mean, if it's a if it's a public forum to use the social media account in this way, then blocking someone from that public forum is viewpoint discrimination. I think Representative Rice wants to focus just on the state action component first divorced from the kind of account or what she's doing in the account or even what happened on a particular day, because that narrow inquiry obscures the fact that this is that the issue here is whether this is a public forum. You know, it's sort of a secular argument. You need to address whether she's their state action. Oh, absolutely. I think that is a requirement here. But it's both the Second Circuit and the Fourth Circuit have identified in the judge that here, too, in our case, is that in the case of a public forum, the state action inquiry is rarely considered separately. They tend to be considered at one time. And that's because, as I mentioned, the public forum can only be created by a state actor. And so, you know, this is a bit of a chicken and egg problem. Is it a public forum because she's a state actor? Is she a state actor because it's a public forum? And I think you can get lost in that circle. The issue is, has she taken it upon herself to invite discussion with her constituents on the performance of her job in an area or using a tool that allows her constituents to respond positively or negatively to what she tweets? And if that is the case, then certainly she could have a Twitter account that allowed for no comments. I don't think there's any dispute that she could do that. But once she allows comments on that page, she's bound by the First Amendment not to discriminate based on viewpoint. And that's really what she did here was forever block Mike Campbell from accessing her tweets or from commenting on her tweets because she didn't like the message that he retweeted on his own account. Well, you seem to be saying we can skip over whether there's state action and just look at whether there's a public forum and then infer from the fact of a public forum that she's a state actor. Could you address whether she is a state actor? Yeah, I believe she is a state actor and I don't think those questions are separable. I don't think. It's why she's a state actor when she's tweeting about her campaign or when she's blocking. Well, looking at the second and the fourth circuit cases, what those courts said was, what the person there is doing, what either the president is doing or the chair of the county commission in the Davidson case were doing was cloaking their Twitter account with the trappings of office or using that to affect their job, their official duties. Now, Mr. Parrava said with the president, he can effectuate his actual duties by Twitter. I'm not sure. I mean, I don't think he can veto a bill over Twitter, but I think he can use that platform to speak to the country about policy, about his agenda, that sort of thing. So I think that that encompasses what he is doing. And the same thing is true with a state legislator. The primary purpose of a state legislator or their primary duty is to represent their constituents, to listen to what they say, to bring those issues before the General Assembly and to enact legislation that complies with the will of the people. And so the real question is, when she is doing that, if she's involved in that, getting information from her constituents and offering them the opportunity to respond, I think she's engaging in state action because that's her job. Now, the issue of whether Twitter as a third-party platform prohibits this from being state action because anybody can block on Twitter. Well, the Second Circuit addressed that and said, just because anyone can block on Twitter doesn't convert the president into a private citizen when he uses that function. The question is, when does he use that function and what is the effect of using that function? And there the effect was to silence his critics. And that's essentially the same thing that's happening here. The evidence deduced at trial showed that Representative Reisch had blocked 123 different users on Twitter. And as we showed at trial, those users were critical of her. So I think that the other reason it's state action is the point of what she did was to shut down speech that is critical of the government. And that's really the core protection of the First Amendment is your right to criticize the government, to say what it's doing is wrong. And so I don't think she can use a third-party platform to prevent criticism and not have to deal with the public forum issue. Unless there's other questions. I believe the amicus has the next five minutes. Well, Madam Clerk, is that correct or was that time allotted separately on the clock? No, sir. She has her own separate five minutes. All right. You still have four minutes and 48 if you wish to proceed. Wonderful. If you wish to proceed, could you address the last thing Mr. Raup said about government speech and whether if Reisch is a state actor, her choices about what speech to allow and not allow are themselves government speech? Certainly. So when she tweets, the content of her own tweets I believe is government speech. That is speech by the government and the government can choose what it wants to say. There aren't any restrictions on what the public forum part of this and the part that is not government speech is the interactive portion because that is the portion that is wholly controlled by other users. By the public who can comment. They can say I agree with you, Representative Reisch. They can say I disagree with you. They can say I think you should adopt this particular policy. The government doesn't have control over those comments. So I don't think it is government speech in that sense. One of the analogies that people have drawn is to the Pleasant Grove versus Sumim case about the positioning of monuments in public parks. There, the Supreme Court held that municipality adopting or agreeing to put up a private monument is government speech because the county or the entity is adopting that speech as its own. And the court was concerned that because there is a limited amount of space in a public park, if we require them to adopt every monument that someone wants to put forward, that is unreasonable or untenable. Twitter, of course, is different because it has nearly an infinite amount of space. There is no restrictions on how many people can comment. So it is actually an ideal environment for having a public forum. It is probably one of the best public forums ever invented, I would suggest, because it allows everybody to participate in that communication in that give and take. So I think the only part of it that is government speech is the part that is drafted by Representative Rice herself, and then the comments are not. So they are not entitled to, they are not free of First Amendment restrictions because they are written by other people. And I'm just going to square with the license plate case, the Vanity license plate case, where the court said, what you or I choose to put on our plates is government speech. Yeah, so there what you have is the, I think it was a Confederate flag, wanting to put a Confederate flag on, I think it was the Texas license plates. And like the Suman case, the court said, well, this is, this has the imprimatur of Texas on it. I mean, quite literally, it's stamped Texas on the plate itself. It's something that's issued by the government. And so it has the effect of seeming to be the voice of the government. And so that's what makes it government speech, that government should have the ability to limit what it says, and Suman, the government should have the ability to not adopt a particular monument or put it on public space, because it gives the appearance of condoning or adopting that message. And that's really the thing that the government speech doctrine is trying to accommodate, that we don't want to be able to use a, to adopt a private message, if that makes sense. You don't think, do you see any concern if you force a state actor to publish on a Twitter feed that comes under her name, certain views with which she disagrees? So, she's not required to allow comments at all. She could have an account, she could have a website for that matter that didn't have an interactive feature that just, you know, was just her voice and there was no opportunity to respond to it. What makes this a public forum is that the nature of Twitter itself as a social media platform invites that kind of conversation. It invites other people to speak, to interact, and to engage in that discussion. And so, you know, there are many ways that she can avoid having negative things posted about her on her Twitter account. She can not have a Twitter account, she can have a Twitter account that doesn't allow for messages or comments. But if she is going to allow comments, it is sort of bedrock First Amendment principle that the government can't distinguish between speakers based on their viewpoint. All right. I think your time now has expired. Thank you, Your Honor. Thank you for your argument. Ms. Fowler, we'll hear from you as a friend of the court. Good afternoon, Your Honors, and may it please the court. I want to thank the court for allowing me the opportunity to participate in oral argument. This case presents the first opportunity for this circuit to consider the First Amendment implications of a growing phenomenon, and that is the use by public officials at the federal, state, and local level and across the political spectrum to use social media accounts to further their official duties and to foster public discourse. Given the importance of protecting these new kinds of public forums from censorship and the precedential impact of this court's decision, amicus respectfully asks the court to consider three issues as it decides this case. First, in determining state action, this court should consider Reisch's act of blocking, not in isolation, but in the context of how she used the account. The Second and the Fourth Circuit have correctly concluded, applying the same state action precedents that this circuit uses, that when a public official uses a social media account as an instrument of governance, her act of blocking people from that account is fairly attributable to the government, just as the act of a city counselor who closed the door on someone who was trying to speak at an open public meeting would be engaged in state action, even if anyone and not just a government employee could shut the door. Second, this court should decline appellant's invitation to create a categorical rule that a legislator's social media account can never be a public forum. Instead, the court should recognize that when a legislator uses a social media account to communicate with her constituents and with the public about her official duties, her act in blocking people from that account is state action and she must comply with the First Amendment. I just wanted to respond to the extent that appellant suggested that no other court has held that a single legislator can establish a public forum. I don't think that's correct. The Fourth Circuit in Davison, the defendant in that case was a legislator. She was the County Board of Supervisors, which is a legislative body. The court, including Judge Keenan, who wrote separately, recognized, looked at her Facebook account in the totality of circumstances, looked at the way she used it, how she identified herself, the photos she had on the page, and what she used the Facebook page for, which was to inform her constituents about upcoming meetings of the board, to ask solicit input about legislative or policy proposals, or to make announcements about official trips she took in her role as a legislator. Similarly, in this case, the district court found that Rice used her account, the photo of her sitting at her desk on the Missouri legislative floor. She identifies herself as the representative for the 44th District, and she used the account regularly to tweet about her legislative and policy priorities, to communicate with constituents who are asking her things about her work, and to also communicate with other lawmakers. How is this arrangement any different from a campaign brochure? In other words, as we know, the First Amendment protects the right not to speak just as much as it does the right to speak, so why isn't this sort of a compelled speech case, where what the plaintiff is asking for is to compel the defendant here to say things that she doesn't agree with? Well, I think maybe there's two parts to that question. The first part is, if it is state action, and she is running, as we believe it is, she was operating this account as part of her official duties and to carry out her official duties, and then the district court properly held, if it is state action, when the way that she runs this account, it functions as a public forum, just in the way that President Trump's account has been found to function. I guess I was asking a state action question, and I guess your answer is, it's just there's too much about what happens on this site to characterize it as a campaign brochure. Is that what you're saying? Yes, I think if you look at it as a mode of campaigning for office, as opposed to a mode of governing, I guess is your point. Is that right? I think our point is that it appears that Representative Reich was using it for both purposes, and I think the analogy would be, if a city council member who is presiding over an open town hall, town meeting, also says at the end, I've been working hard for this district, that doesn't convert the entire town hall then into a campaign rally. It's still a town hall. You don't want us to focus on this particular event though, you say, isn't that correct? Don't you want, you're asking us to characterize this thing as a whole, isn't that correct? Yes, Your Honor. Or how do you, if you, as you say, it's protean, it's sometimes one thing, sometimes another, how do you make such a characterization? The main object, the main purpose, the route, do you see the problem? I see that it is a problem, excuse me, it's a flexible standard that is fact-based and based on the totality of the circumstances, and certainly in any particular case, there may be some factors that weigh in favor of finding state action and some factors that don't, and necessarily the courts will legislator chooses to, in an account that they do use for official purposes, and you can look at all the tweets, which I believe are in the record, and if you then conclude that this account is being used for official purposes, the fact that she then blocked someone, maybe because she was motivated by personal animus or because of in campaign, for the, for her campaign purposes, but I think it's important to consider that issue is just one factor, but also very important to consider what the impact of blocking is, because the impact of blocking, even assuming she blocked Campbell for campaign-related purposes, the impact of the block is he can never participate in the forum, that she also uses for official purposes. There's other alternative modes of criticizing. Oh, certainly, we don't dispute that, I mean, in, under First Amendment law, the fact that you may have other ways of speaking does not excuse government censorship, so if right, right, so if it is true that he can still speak in other ways on, through his own Twitter account, but the fact of the matter is, is as a result of the block, he cannot read her tweets, and he cannot reply to her tweets. He can't read her tweets, can he not if he goes through another account? Yes, he could. It's just that if he goes through the tweet app, he can't do that, but otherwise, he can get on there and look all day long. Certainly, there are other ways, but it's costless. I'm sorry? It's costless. Well, there's no more trouble to do that than it is to go through the app. In fact, he doesn't even have to log in. He doesn't even have to log in to read her tweets. Well, if he goes, if, if you're browser or through an app, you're logged in under your account, so certainly you could open a different browser window, or you could open up, you could establish a separate account. There are ways around it, and as there, this may not be the hugest burden on your speech, but it's a burden that was imposed because of viewpoint discrimination, so in that instance, there is no legitimate government interest in blocking people from a public forum because you don't like what they have to say, and so even if the burden is not huge, it's still a burden that is, affects that person's First Amendment rights, and I think particularly given the, how impermissible viewpoint discrimination is in any forum, not even, you know, even in a non-public forum, that the speaker's First Amendment rights should prevail here. Suppose the legislator just set up a campaign Twitter account. Do you foresee a situation in which a legislator could do that without becoming a state actor, even if the legislator was seeking re-election and campaigning based on what the legislator had done in office? Absolutely, and I will say, actually, in the Davison case, the defendant there had two separate Facebook pages. She had her Chair Phyllis Randall Facebook page and then Friends of Phyllis Randall Facebook page, which she used for campaign purposes, and I believe that elected representatives are often required to adhere to rules or regulations to separate their campaign activities from their governing activities, such as when they can use official stationery, and so they have the choice to set up two different accounts, but if you are it is appropriate to find that there is state action and you are not allowed. If you use it at all for an official purpose, one time, that makes the whole account into a state actor? I think that if it's just one time in an otherwise purely personal or overwhelmingly campaign account, that that probably is not sufficient to transform the nature of it. Again, I do think this is a very fact-based account and you have to look at, and I think that the factors identified by the Second and the Fourth Circuit provide a good roadmap of how to weigh these facts in the totality of the circumstances of a particular account. Well, thank you for your argument. We appreciate your participation. Thank you, sir. Mr. Raupp, we'll hear from you and Rapallo. Thank you, Your Honor. In both Lugar v. Edmondson Oil and in American Manufacturers v. Sullivan, the Supreme Court explained that the state inquiry analysis begins by identifying the specific conduct of which the plaintiff complains. Here, that is the act of blocking on Twitter, and I don't believe that there was any dispute throughout the argument that even if that is broadened to what the actual incident was here, the speech that gave rise to this dispute that ultimately led to the blocking, that that was pure campaign speech. It was about a campaign event during the candidate's campaign. That's what gave rise to this. And not only is this important from a state action perspective, but of course, the speech of a political candidate is protected speech in their own right. They have First Amendment rights of speech and of association too. So, while we're focused here on the state action inquiry, that line is critically important between campaign speech and what we're deeming to be official speech, which again, it has to harken back to whether they are effectuating a duty of their office through speaking. And here, that simply didn't happen. And I think that, again, even under a broadened inquiry that looks at this specific incident, it's pure campaign speech, and that should be the end of the matter. What about the fact that it blocks Campbell from responding to official tweets, so to speak? Accepting that there is such a thing as official, any sort of official activity. Assuming that. Yes. Yes. Yes, Judge Colleton. Assuming that that is correct, I still don't think that's an accurate description of what the state action inquiry is. Because now, supposedly, we're supposed to take an action that under any circumstances would be indisputably not state action, and then look to a speculative future constitutionally protected right. And if there's a chance that that will state action in the present, I don't think that anything like that has been articulated by the Supreme Court or by this court. All right. Seeing no further questions, we thank you for your argument. We thank all counsel for participating. The case is submitted, and the court will file an opinion in due course.